HARRISON E. FRYBERGER,

*vs.*

CONSOLIDATED ELECTRIC AND GAS COMPANY, a corporation organized and existing under the laws of Delaware, CENTRAL PUBLIC UTILITY CORPORATION, a corporation organized and existing under the laws of Delaware, and THE ARGUS CORPORATION, formerly Central Public Service Company, a corporation organized and existing under the laws of Delaware.

*New Castle, May 25, 1938.*

*Caleb R. Layton, 3rd,* for complainant, with *Harrison E. Fryberger in pro. per.*

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, and *Arthur M. Boal,* of Tompkins, Boal & Tompkins, of New York City, for defendants other than The Argus Corporation

*E. Ennalls Berl,* of the firm of Ward & Gray, for The Argus Corporation.

THE CHANCELLOR: The complainant bought stock in Public Service in the years 1929 and 1930. He alleges that his purchases were induced by false and fraudulent representations made to him by persons acting in behalf of Public Service. The nature of the representations are set out in the bill, but are not here recited. In April of 1932 the complainant says he became suspicious that the representations made to him were false and in the same month sought from Public Service a rescission of his purchases, returning to it his certificates in an attempted surrender thereof. Public Service, however, never acceded to the complainant's demand, though it retained the certificates. Complainant alleges that in 1934 and 1935 he learned definitely that the representations made to him were in fact false and fraudulent.

The complainant, by reason of the alleged fraud committed upon him in his purchases of the stock, and his repudiation thereof, insists that his status thereafter was that of a creditor of Public Service and not that of a stockholder. The relief he seeks is such as he claims he is entitled to as a creditor.

On August 1, 1932, Public Service underwent a reorganization which took the form, the bill alleges, of a transfer by it to Consolidated and Public Utility of substantially all of its assets, under terms, conditions and circumstances which entitle the complainant in his status of creditor of Public Service not only to look to those assets in the hands of the transferee corporations for satisfaction of his claim, but as well to look to the transferees as independently liable as a creditor of Public Service.

By their demurrers, the defendants contend that the matters complained about in the bill were in issue between the parties hereto in a cause litigated in equity in the Supreme Court of New York and there adjudicated adversely to the complainant, which adjudication was affirmed on

appeal by the Appellate Division, *Fryberger v. N. W. Harris Co.*, 248 *App. Div.* 714, 290 *N. Y. S.* 133, and finally by the Court of Appeals of New York, 273 *N. Y.* 115, 6 *N. E.* 2d 398. The bill in this cause with its exhibits sets out the New York proceedings in full, showing the parties thereto, the pleadings, testimony, findings of fact and conclusions of law by the court, the memorandum of decision and the decree which was entered. As all these matters appear in the pending bill, the defendants are thus enabled to raise by demurrer their contention that the grievances here complained against have passed *in rem judicatem* before a court of competent jurisdiction elsewhere.

Public Service, however, is not in a position to stand on the estoppel of the New York decree as a defense here, because though it was made a party in that cause, it was neither served with process nor did it appear therein. In behalf of Public Service, the case of *Coca Cola Co. v. Pepsi-Cola Co.*, 6 *W. W. Harr* (36 *Del.*) 124, 172 *A.* 260, is cited to sustain the proposition that Public Service, notwithstanding it was not before the court in the New York suit, can nevertheless avail itself of the conclusiveness of the decree there entered. The cited case rests on exceptional grounds as appears from page 128 of the opinion in the report of the case in 6 *W. W. Harr.* (36 *Del.*) 124, 172 *A.* 260. Public Service cannot bring itself within the principle of the exception to the general rule which is recognized in the *Coca Cola case.*

What follows, therefore, in the way of discussion upon the point of estoppel by former judgment, applies only to Consolidated and Public Utility, which were parties before the court in the New York suit.

It is a general principle of universal acceptance that when a judgment or decree has been rendered upon the merits of a cause of action, it is an absolute bar to a subsequent suit or action upon the same cause of action be-

tween the same parties, "not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented." *Baltimore Steamship Co. v. Phillips*, 274 *U. S.* 316, 319, 47 *S. Ct.* 600, 602, 71 *L. Ed.* 1069. It is equally a general principle of universal acceptance, that even though the subsequent suit be on a different cause of action, if it be between the same parties as the prior one, the former judgment is conclusive and final as to any issue necessary to the decision and actually litigated and determined in the former action, however erroneously, and which is essential to the maintenance of the second action. *Jones v. Charles Warner Co.*, 2 *Boyce* (25 *Del.*) 566, 83 *A.* 131; *Venetsanos v. Pappas*, 19 *Del. Ch.* 347, 184 *A.* 489.

These principles govern the facts shown here. What are those facts? They are that the complainant filed a suit in equity against Consolidated and Public Utility, among others, charging the same identical fraudulent representations as are here charged as having been made to him by Public Service as an inducement to him to purchase the same stock as is here involved, the same repudiation by him of his status as a stockholder and the acquisition by him of the status of a creditor, the same liability of the defendants to respond to him for his claim for deceit practiced against him by Public Service, and the same liability of the defendants' assets to be burdened with an equitable lien in his favor. The pleadings in the New York case, the evidence adduced at the trial, the court's findings of fact and law (one hundred and sixteen of the former and fourteen of the latter), and the decision dismissing the bill after a hearing on the merits are all before this court. They show the complaint there made is identical with the one here made. The opinion of the Court of Appeals found reported in *Fryberger v. N. W. Harris Co.*, 273 *N. Y.* 115, 6 *N. E.* 2d 398, 399, describes the bill in New York as one which "demands an equitable lien on the assets so trans-

ferred," which is exactly the demand here made in one of its phrasings.

After a full and extensive hearing at which a large volume of testimony was taken, the trial court found against the complainant on the fundamental issues. It found that no false representations had been made, that the complainant in his purchases placed no reliance on any representations and that there was no competent evidence to sustain the complainant's theory that Consolidated and Public Utility should respond to the complainant on account of any obligation which the complainant could have enforced against Public Service. The bill was accordingly dismissed. The decree of dismissal was affirmed on appeal. The decree makes brief reference to the court's statement of the facts found and the conclusions of law thereon, and then formally dismisses the bill. Recourse may be had to the formal pleadings, to the issues framed or even to parol evidence, when necessary, to show what questions were submitted and necessarily passed upon by the court in rendering its judgment. *Venetsanos v. Pappas, supra.* It is necessary in this case to refer only to the court's findings of fact and conclusions of law and the decree based thereon, to show very convincingly that what the complainant here seeks to litigate against Consolidated and Public Utility has been fully heard and determined against him elsewhere by a court of competent jurisdiction.

But, says the complainant, a portion of his cause of action here presented was never passed upon by the New York court because it was never presented. In this statement the complainant refers to the fact that there was one block of one hundred shares of Public Service stock which he alleges he bought because of fraudulent representations, which was not complained against in the New York suit, and which the decree in that suit therefore did not affect. But the facts constituting the allegedly false representations were the same with respect to the one hundred shares

as with respect to the larger block involved in the New York suit, and the circumstances out of which the liability of Consolidated and Public Utility to respond in damages and of their assets to be impressed with a lien, are all identical with those found in the New York suit. Those facts and circumstances have been concluded against the complainant. So that, even conceding the cause of action here to be different from that presented in New York because of the presence here and the absence there of a complaint regarding the one hundred shares, yet the estoppel of the New York decree operates to bar the complainant from a re-examination of those facts and circumstances. *Jones v. Charles Warner Co., supra; Venetsanos v. Pappas, supra.*

The demurrer of Consolidated and of Public Utility will be sustained.

It remains to consider the demurrer filed by Public Service, now The Argus Corporation. As before stated, that company cannot rely on the estoppel of the New York decree. The demurrer raises other objections, among which is this one, that as against Public Service the complainant has an adequate remedy at law. The prayer for relief against Public Service is for a money decree in the amount of $24,900.00, that being the amount of the damages alleged to have been suffered by the complainant by reason of the alleged false representations made to him in the purchase of the stock. An action at law would lie for such damages. There is no such case against Public Service shown by the bill as would sustain it in equity under the jurisdictional head of accounting. So far as the demurrer of Public Service is concerned, the case is similar in principle to *Cochran, Rec'r., v. F. H. Smith Co.,* 20 *Del. Ch.* 159, 174 *A.* 119, where it was held that a demurrer should be sustained because of the adequacy of a legal remedy.

Order in accordance with the foregoing.