**Phillip PLACE, et al., Appellants,**

v.

**P.M. PLACE STORES COMPANY, et al., Respondents.**

**No. WD 51671.**

Missouri Court of Appeals, Western District.

Dec. 24, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1997.

Application for Transfer Sustained March 25, 1997.

Case Retransferred Sept. 30, 1997.

Court of Appeals Opinion Readopted Oct. 3, 1997.

Timothy Joseph Sear, Kansas City, for Appellants.

John R. Cleary, Kansas City, for Respondents.

Before ULRICH, C.J., Presiding, and HANNA and SPINDEN, JJ.

ULRICH, Chief Judge, Presiding Judge.

Appellants, Phillip Place, Sharon Place, Kathleen Faye Place Trust, and Billy H. Place Trust, shareholders of P.M. Place Stores Company (Company), appeal the judgment of the trial court in favor of the Company and 19 other defendants regarding a June 30, 1993 transfer of the Company's treasury stock to former stockholders. The transfer affected control of the Company. Appellants sought a rescission by the trial court of the June 30, 1993 transfer claiming that it was not authorized by a valid board of directors. They also sought a declaration that all boards of directors elected since February 16, 1992, were illegally constituted boards. The trial court found that Appellants lacked standing to maintain the action both individually and as shareholder representatives in a shareholder derivative action. The court also upheld the actions taken by the boards of directors elected since February 16, 1992, including the transfer of treasury stock to former shareholders on June 30, 1993. The judgment of the trial court is reversed, and the case is remanded.

P.M. Place Stores Company, which was incorporated in Missouri in 1947, owns and operates retail variety and discount stores in Missouri, Kansas, and Iowa. The Company's articles of incorporation authorize issuance of 150,000 shares of common stock. As of December 1, 1991, 71,684 shares were issued and outstanding. Appellants owned 20,748 shares, or approximately 27 percent of the outstanding stock.

On December 23, 1991, the Company distributed a prospectus offering to purchase 48,116 shares, or 67.12 percent of its issued and outstanding stock, from its shareholders for $14.28 per share. The Company's employees would then be allowed to purchase the treasury stock for $14.28 per share by paying $.28 per share down and executing a promissory note for the remainder. Appellants sought to enjoin the sale in the Circuit Court of Harrison County contending that this plan violated section 351.165, RSMo 1986.

At the annual stockholders' meeting on January 19, 1992, Respondents Charles M. Place, Charles P. Place, Wayne F. Lee, Martha Place, and William B. Henry were elected to the board of directors. The circuit court dismissed Appellants petition for injunctive relief on January 21, 1992, and Appellants appealed to this court.

While the appeal from the dismissal of Appellant's petition for injunctive relief was pending, the Company proceeded to effect the plan. The Company purchased 48,116 shares of stock from Respondents Charles P. Place Trust, Martha Place, Robert Place, Joe K. Place, Ed Place, Maurice Forbis, Paul Osborne, Margaret M. Place Trust, and nonparties Joe M. Place Trust and Kenneth M. Place Trust (Former Shareholders) on January 19, 1992. Having sold their stock to the Company, Charles P. Place and Martha Place resigned as members of the board of directors. On the same day, the Company sold the shares, representing approximately 68 percent of the outstanding stock of the Company, to 119 of its employees in exchange for promissory notes.

A special meeting of the Company's stockholders was held on February 16, 1992, to expand the board of directors from five to nine members and to elect a new board. Prior to the election, Charles M. Place, William Henry, and Wayne Lee resigned as directors. The stockholders then elected Marci Divine, Phil Hill, Darell Biddle, Susette Nicholls, Charles M. Place, William Henry, Wayne Lee, Bob Carmichael, and Debra Coleman to the board of directors. Appellants did not attend the special meeting.

The annual stockholders' meeting was held on January 17, 1993, and Respondents Marci Divine, George Mosby, Randy Kuhn, Susette Nicholls, Charles M. Place, Bob Carmichael, Wayne Lee, Chuck Mason, and Dick Sweet were elected to the board of directors. Appellants did not attend this meeting either.

On May 27, 1993, this court reversed the trial court's January 21, 1992 order dismissing Appellant's petition, holding that the sale

of stock to the employees in exchange for promissory notes was illegal. *Place v. P.M. Place Stores Co.*, 857 S.W.2d 291 (Mo.App.1993)(hereafter *Place I* ). The case was remanded to the trial court to "enter an order rescinding the sale of the treasury shares for promissory notes and replace the shares in the treasury of the corporation." *Id.* at 293. Thereafter, on June 8, 1993, the Appellants' attorney sent a letter to the Company's board of directors asserting that the board of directors was not a legally constituted board in that it was elected with illegal votes and demanding that the board not take any action including the issuance, sale, or redemption of the Company's stock without Appellant's prior written consent.

At a June 21, 1993 board meeting, the board of directors approved a plan to rescind all stock sold to its employees for promissory notes and return the stock to the treasury of the Company. The Company would then transfer the treasury stock back to the former shareholders. Charles M. Place, Charles P. Place, William Henry, Wayne Lee, and Martha Place, members of the board of directors elected on January 19, 1992, also approved the plan.

The Company rescinded the sale of stock to its employees, replaced the shares in the treasury, and transferred the treasury stock to the former shareholders on June 30, 1993. Appellants filed their petition in this action on December 17, 1993, seeking a rescission of the June 30, 1993 transfer of treasury stock to the former stockholders and requesting a declaration that all boards of directors elected since February 16, 1992, were illegally constituted boards. Following a bench trial, the trial court entered judgment against Appellants. This appeal followed.

### I. Standing

Initially, Appellants claim that the trial court erred in finding that they lacked standing to bring this action both individually and as shareholder representatives in a derivative action.

■ In a bench-tried case, the decision of the trial court must be upheld on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976).

■ Generally, corporate shareholders cannot in their own right and for their own personal benefit maintain an action for the recovery of corporate funds or property improperly diverted or appropriated by the corporation's officers and directors. *Dawson v. Dawson*, 645 S.W.2d 120, 125 (Mo.App.1982); *Schick v. Riemer*, 263 S.W.2d 51, 54 (Mo. App.1953). The injury is to the corporation, i.e. to the shareholders collectively, and not to the shareholders individually. *Id.* The right to maintain the suit is a right of the corporation. The suit, therefore, must be brought derivatively by a shareholder or shareholders who fairly and adequately represent the interests of shareholders similarly situated. *Dawson*, 645 S.W.2d at 125–6; Rule 52.09.

■ Similarly, an action based on acts relating to the capital stock of a corporation as a whole is a corporate cause of action that cannot be sued for by a shareholder individually. *Gieselmann v. Stegeman*, 443 S.W.2d 127, 131 (Mo.1969). The action is individual and not derivative, however, if the acts complained of, although relating to the stock as a whole, work an injury to individual shareholder rights as between them and the corporation and its other shareholders. *Id.* at 131–32. For example, where an unlawful increase of stock ousts the complaining stockholders from their position as controlling stockholders, the injury to the complaining stockholder is distinct from that suffered by other stockholders, and the action must be maintained individually. *Id.* at 132.

■ In this case, Appellants asserted in their petition that the June 30, 1993 transfer of treasury stock was invalid and deprived them of their position as controlling shareholders. They claimed that the board of directors that authorized the transfer was not legally elected, and, thus, the transfer of treasury stock to the former shareholders was invalid and must be rescinded. If the June 30, 1993 transfer is not rescinded, Appellants shares would constitute approxi-

mately 27 percent, or a minority interest, of the Company's outstanding stock. On the other hand, rescission of the transfer and replacement of the stock in the treasury of the Company would decrease the Company's outstanding stock, and Appellants' shares would then equal approximately 90 percent of the outstanding stock. The position of Appellants as controlling stockholders, therefore, is at issue in this case, and the action was properly brought individually. The trial court erred in finding that Appellants lacked standing to maintain the action individually.

## II. Validity of Board of Directors

Appellants next claim that the trial court erred in upholding the board of directors' June 30, 1993 transfer of treasury stock to former shareholders. They contend that the stock transfer was not authorized by a validly elected board because no quorum existed at any meeting of the shareholders since the illegal sale of treasury stock to the Company's employees on January 27, 1992. Respondents argue that equity required the trial court to sustain the June 30, 1993 stock transfer. They contend that if the transfer is invalidated and the stock remains treasury stock, Appellants would become controlling stockholders with their shares constituting approximately 90 percent of the outstanding stock. Respondents do not directly argue that the June 30, 1993 stock transfer was authorized by a legal board of directors. Instead, they contend that a recission of the transfer would result in inequity.

■■■ Equity may not be invoked to destroy an existing legal right. *Seifert v. Seifert,* 708 S.W.2d 150, 156 (Mo.App.1985). Equity follows the law, and a court of equity, just as a court of law, is bound by established rule and precedents. *Id.* Where the rights of a party are clearly defined by statutes, legal principles, and precedents, those legal principles may not be unsettled or ignored. *Milgram v. Jiffy Equip. Co.,* 362 Mo. 1194, 247 S.W.2d 668, 676 (Mo.1952).

Section 351.315, RSMo 1994, regulates the election of a corporate board of directors. It provides for the election of directors at the first annual meeting of shareholders and at each annual meeting thereafter by shareholders entitled to vote. § 351.315.1, RSMo 1994. Section 351.265, RSMo 1994, and the Company's by-laws require that a majority of the outstanding shares of the corporation, represented in person or by proxy, be present to constitute a quorum at a meeting of the shareholders. § 351.265.1, RSMo 1994.

■■ The January 17, 1993 shareholders' meeting at which the purported board of directors who authorized the June 30, 1993 stock transfer was elected lacked a requisite quorum. In *Place I,* this court held that the sale of 49,236 shares of treasury stock to the Company's employees was illegal. *Id.* at 293. Thus, on January 17, 1993, the date of the annual shareholders' meeting, there were only 22,448 legally-owned outstanding shares. Appellants, who owned 20,748, or approximately 90 percent, of the outstanding stock, did not attend the shareholders' meeting. With only 10 percent or less of the legally-owned outstanding stock represented at the meeting, a quorum did not exist. Because the January 17, 1993 shareholders' meeting lacked the requisite quorum, the election of the directors at that meeting was a nullity. The June 30, 1993 stock transfer, therefore, was not authorized by a valid board of directors.[1]

■■ The General and Business Corporation Law of Missouri provides that a quorum must exist at a corporate shareholders' meeting before business may legally be conducted. A quorum of a meeting of shareholders shall never consist of less than a majority of the outstanding shares entitled to vote. § 351.265, RSMo 1994. The trial court erred in ignoring this legal principle in the name of equity. The trial court also found that the January 27, 1992 resignations of Martha

---

1. This opinion does not address the issue of whether any other act of the board of directors purportedly elected on January 17, 1993, was valid. Furthermore, it does not address whether the board of directors purportedly elected on February 16, 1992, was valid. The evidence in the record is unclear regarding whether Appellants, who owned 90 percent of the legally-owned outstanding stock at the time, attended the stockholders' meeting to constitute a quorum.

Place and Charles P. Place and the February 16, 1992 resignations of Charles M. Place, Wayne Lee, and William Henry were ineffective. The former board, which was the duly elected board of the Company at the time of the illegal sale of treasury stock to the Company's employees, ratified the June 30, 1993 stock transfer along with the board purportedly elected on January 17, 1993. Apparently, the trial court determined that the former directors retained their positions on the board and that their ratification effectively authorized the June 30, 1993 stock transfer.

■ This finding is erroneous. First, in their answer, Respondents admit that Martha Place, Charles P. Place, Charles M. Place, Wayne Lee, and William Henry resigned as directors in January and February 1992. They do not contend that the resignations were ineffective. Secondly, the resignation of a corporate officer becomes complete the moment the resignation is made to the proper body absent a statutory provision to the contrary. William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 349 (1990). This is the rule notwithstanding section 351.315.1, RSMo 1994, which provides that directors shall hold office until their successors are duly elected. *Id.* The resignations of the former directors, therefore, were effective, and their ratification of the June 30, 1993 stock transfer did not provide valid authorization for the transfer.

The judgment of the trial court is reversed, and the case is remanded with instructions that the court enter an order rescinding the unauthorized June 30, 1993 stock transfer to the former shareholders.

All concur.